UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI, OHIO

| | | |
|---|---|---|
| **JANE DOE** | : | **CASE NO.** _____ |
| c/o Rittgers Rittgers & NAKAJIMA | : | |
| 12 E. Warren St. | : | **JUDGE** |
| Lebanon, Ohio 45036 | : | |
| | : | |
| Plaintiff, | : | **COMPLAINT; JURY DEMAND** |
| | : | **ENDORSED HEREON** |
| vs. | : | |
| | : | |
| **DEPARTMENT OF HOMELAND** | : | |
| **SECURITY** | : | |
| 2707 Martin Luther King Jr. Ave. SE | : | |
| Washington, DC 20528-0485 | : | |
| | : | |
| and | : | |
| | : | |
| **U.S. IMMIGRATION AND CUSTOMS** | : | |
| **ENFORCEMENT** | : | |
| 500 12th St. SW | : | |
| Washington, DC 20536 | : | |
| | : | |
| and | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| and | : | |
| | : | |
| **ANDREW GOLOBIC** | : | |
| 562 Maple Lane | : | |
| Mason, OH 45040 | : | |
| | : | |
| **Defendants.** | : | |

Now comes Plaintiff, by and through counsel, and for her Complaint states as follows:

## PARTIES

1. Plaintiff is a 25-year-old resident of Ohio who is a female native of Mexico and detainee of the United States Government.

1

2. Plaintiff is proceeding under a pseudonym and is filing a motion for permission to do so simultaneous with the filing of this Complaint, as she is a survivor of sexual assaults and the disclosure of her identity in the public record will cause her further harm.

3. Defendants Department of Homeland Security, U.S. Immigration and Customs Enforcement, and United States of America (collectively "USA") constitute a sovereign which has waived its immunity from certain claims, including the claims stated herein, and is liable for the acts of its employees and agents.

4. Defendant Golobic was at all times relevant to this Complaint a Deportation Officer of Defendant USA.

## **FACTS**

5. In or about April 2018, at age 20, Plaintiff was detained by USA, released soon thereafter, and assigned to the supervision of Defendant Golobic, a male employee of USA in his 50s in age.

6. Golobic's supervision was supposed to be conducted primarily through a phone application called SmartLink.

7. Soon after Plaintiff began supervision with Golobic, her phone app stopped working correctly.

8. Plaintiff dutifully went to Golobic's office for assistance.

9. Golobic took Plaintiff's phone and looked through the pictures.

10. Golobic told Plaintiff, "This is what I want to see" when he saw a picture of Plaintiff at the gym.

11. Golobic then became flirtatious and gave Plaintiff his phone number.

12. Golobic's personal cell phone number was the only number Plaintiff ever had to stay in contact with him.

13. A short time later, Plaintiff texted Golobic because she needed her passport to open a bank account.

14. Golobic took Plaintiff's passport from his office to his house and told Plaintiff to come over to get it.

15. Plaintiff went to Golobic's house to pick up the passport.

16. Golobic was very flirtatious and asked Plaintiff to have sex.

17. Plaintiff was very scared and told Golobic she had a boyfriend (who is now Plaintiff's husband) and that she did not want to have sex with Golobic.

18. Plaintiff asked Golobic multiple times for him to give her the passport, but he ignored her requests.

19. Plaintiff felt trapped.

20. Golobic forced Plaintiff into submitting to sexual conduct and only afterwards gave her the passport.

21. In the weeks after the first rape, Golobic repeatedly told Plaintiff to come to his house again.

22. Plaintiff evaded by saying she could not and had a boyfriend.

23. Golobic persisted in requesting Plaintiff come to his house.

24. Plaintiff was living with her mother and brother, who are both undocumented, in a trailer park where a number of undocumented immigrants also live.

25. Golobic made comments which led Plaintiff to believe he would retaliate against Plaintiff for rejecting his sexual advances by arresting her, her family and her neighbors.

26. Plaintiff consequently felt compelled to go to Golobic's house as he demanded; when she did so, he raped her again.

27. Golobic is currently being prosecuted in this Court in Case No. 1:22-CR-00107 for crimes against Plaintiff including sex trafficking. The allegations of the Indictment in that case, in which Plaintiff is described as Victim A, are incorporated herein by reference.

28. Plaintiff has suffered temporary and permanent physical and psychological harm as a direct and proximate result of Defendants' actions, and will continue to suffer harm into the future.

29. Plaintiff has exhausted her administrative remedies under the Federal Tort Claims Act by sending notice of her claims to Defendants and receiving a letter from Defendants denying responsibility.

30. The statute of limitations for Plaintiff's claims must be equitably tolled. Plaintiff is not a native of this country and does not know its laws and rights. Plaintiff has cooperated with law enforcement throughout the criminal investigation and was never told to pursue civil claims. When Plaintiff told her story to the first civil attorney she contacted, he told her he could not do anything for her. Plaintiff's ability to file suit within the statutory period was therefore unavoidable as: 1) Plaintiff was unaware of the filing requirement; 2) Plaintiff had no constructive knowledge of the requirement; 3) Plaintiff was diligent in exercising her rights; 4) there is no prejudice to the Defendants; and 5) Plaintiff was reasonable in remaining ignorant of the requirement.

**JURISDICTION AND VENUE**

31. This Court has jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331, as the lawsuit is brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, and Trafficking Victims Protection Act, 18 U.S.C. § 1581 *et seq.*

32. Venue in this Court is appropriate as the actions giving rise to Plaintiff's claims occurred within this district.

**FIRST CAUSE OF ACTION**
(Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*)

33. Plaintiff incorporates her previous allegations as if fully rewritten herein.

34. All conditions precedent to bringing suit against USA under the FTCA have occurred or been performed.

35. USA has waived its sovereign immunity pursuant to 28 U.S.C. §§ 1346(b) and 2674.

36. Plaintiff suffered personal injury and incurred damages proximately caused by the negligent or wrongful acts or omissions of employees, agents and/or servants of USA. These employees and agents were acting in the course and scope of their employment or agency within the United States government when they committed acts or omissions that perpetrated, allowed, and/or failed to prevent the exploitation and sexual assaults of Plaintiff while she was in the custody, care and control of USA. USA, if it were an individual person, would be liable to Plaintiff under the laws of the State of Ohio for these acts and omissions.

37. USA, by and through its employees, agents or servants, owed a legal duty to Plaintiff to keep her reasonably free from injury and harm while Plaintiff was in their custody and control.

38. USA breached the duty it owed to Plaintiff.

39. The negligence of USA, by and through its employees, agents or servants, includes but is not limited to: failing to control Golobic's isolation of young, vulnerable, female detainees

5

in his home, office and other locations; failing to ensure properly-functioning electronic monitoring applications; failing to have sufficient policies, practices and/or oversight to detect and prevent sexual abuse of vulnerable detainees; and failing to adequately supervise Golobic.

40. As a direct and proximate result of USA's negligence, Plaintiff suffered the damages referenced above.

## SECOND CAUSE OF ACTION
(Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et seq.*)

41. Plaintiff incorporates her previous allegations as if fully rewritten herein.

42. Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000) (codified as amended in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code). The TVPA has been reauthorized several times in the years since. With the enactment of the TVPA in 2000 and through its subsequent reauthorizations, Congress recognized that human trafficking constitutes "modern-day slavery."[1] In both the text of the TVPA and the associated legislative history, Congress revealed a strong intent to provide a means of recovery for victims of sex trafficking by allowing them to pursue civil actions for human trafficking violations.

43. The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. §1591, *et seq.*, criminalizes the sex trafficking of children and adults by force, fraud, or coercion. Separately, §1595 of the TVPRA provides victims of sex trafficking with civil remedies against the perpetrators of sex trafficking and also the beneficiaries of sex trafficking. *See* 18 U.S.C. §1595(a).

---

[1] *See* Markup of H.R. 2620 before House Int'l Affairs Comm., 108th Cong., 1st Sess., at 298 (July 23, 2003) (statement of Rep. Christopher Smith).

44. 18 U.S.C. §1595(a) sets forth the standard for civil liability under the TVPRA. That section provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

45. Under the 2003 version of 18 U.S.C. §1595(a), only those criminally liable under §1591 could be held civilly liable under §1595. However, in 2008, 18 U.S.C. §1595(a) was intentionally amended with substantially different language that created a category of defendants that could be held liable civilly even in the absence of criminal culpability. By amending 18 U.S.C. §1595 in 2008, Congress required "whoever," (*i.e.,* all businesses, including those in the hospitality industry, retailers, and churches), to comply with the new law or face new civil liability. This amendment to the country's systemic human trafficking legislation necessitated a paradigm shift in the business and commercial sections which for decades have enabled, empowered, harbored, held, facilitated, benefitted from financially or otherwise, and/or any combination of the foregoing, from sex trafficking.

46. Under the TVPRA, any individuals and/or entities are civilly liable for a sex trafficking victim's damages if they: (1) knowingly benefitted; (2) from participation in a venture; (3) that they knew or should have known engaged in sex trafficking." 18 U.S.C. §1595(a).

47. Furthermore, 18 U.S.C. §1591(d) prohibits the obstruction, or attempt to obstruct, or in any way interfere with or prevent the enforcement of the TVPRA.

48. USA knew in 2020 that: Golobic had committed criminal violations of the TVPRA against Plaintiff; Golobic was being investigated for the crimes; and Plaintiff was a key witness in the criminal prosecution of Golobic.

49. Despite the knowledge identified in the previous paragraph, USA nevertheless continued deportation proceedings against Plaintiff into 2021, via a faulty notice to appear, which would have had the result of depriving the criminal prosecution of key testimony and likely undermining the charges against Golobic.

50. The continued deportation proceedings constituted retaliation against Plaintiff for reporting the crimes and/or obstruction or an attempt to obstruct the enforcement of the TVPRA.

51. Plaintiff Jane Doe is a survivor of sex trafficking within the meaning of 18 U.S.C. §1591 and is entitled to bring a civil action under 18 U.S.C. §1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

52. As such, Plaintiff is entitled to and hereby asserts a TVPRA claim against Golobic, who is currently being prosecuted for trafficking crimes involving Plaintiff.

53. Plaintiff is also entitled to and hereby asserts a TVPRA claim against USA, which knowingly benefitted from participation in a venture that it knew or should have known engaged in sex trafficking, and/or engaged in retaliation against Plaintiff for reporting the crimes and/or obstructed or attempted to obstruct the enforcement of the TVPRA.

54. Defendants' acts, omissions, and commissions, taken separately and/or together, outlined herein, constitute a violation of 18 U.S.C. §1595.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants for compensatory damages in an amount to be determined by the jury but in excess of $75,000, punitive damages, attorney fees, costs and all other relief to which she may be entitled.

/s/ *Konrad Kircher*
Konrad Kircher (0059249)
Ryan J. McGraw (0089436)
RITTGERS RITTGERS & NAKAJIMA
12 E. Warren St.
Lebanon, Ohio 45036
(513) 932-2115
(513) 934-2201 Facsimile
konrad@rittgers.com
ryan@rittgers.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands trial by a jury on all issues so triable.

/s/ *Konrad Kircher*
Konrad Kircher (0059249)

9